DAVID W. OESTING
**DAVIS WRIGHT TREMAINE LLP**
701 W. Eighth Avenue, Suite 800
Anchorage, AK 99501-3468
Telephone: (907) 257-5300
daveoesting@dwt.com

MICHAEL P. LEHMANN
JON T. KING
ARTHUR N. BAILEY
**COHEN MILSTEIN HAUSFELD & TOLL, P.L.L.C.**
One Embarcadero Center, Suite 2440
San Francisco, CA 94111
Telephone: (415) 229-2080
Facsimile: (415) 986-3643
mlehmann@cmht.com
jking@cmht.com
abailey@cmht.com

Attorneys for Plaintiff
[Additional Attorneys on signature page]

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| ACE DELIVERY & MOVING, INC., on behalf of itself and all others similarly situated, | ) ) ) | Case No. 3:08-cv- |
| | ) | |
| Plaintiff, | ) ) | **CLASS ACTION COMPLAINT** |
| v. | ) ) | |
| | ) | **JURY TRIAL DEMANDED** |
| HORIZON LINES, LLC; HORIZON LINES OF ALASKA, LLC; HORIZON LINES, INC.; TOTEM OCEAN TRAILER EXPRESS, INC.; and AMERICAN SHIPPING GROUP, INC., | ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

Plaintiff Ace Delivery & Moving, Inc., individually and on behalf of all those similarly situated, brings this action for damages and injunctive relief under the antitrust laws of the United States against defendants, demanding a trial by jury, and complaining and alleging as follows:

## NATURE OF THE CASE

1.     The case arises out of an alleged conspiracy by Defendants Horizon Lines, LLC, Horizon Lines of Alaska, LLC, Horizon Lines, Inc., Totem Ocean Trailer Express, Inc., and American Shipping Group, Inc. (collectively, "Defendants") to fix, raise, maintain, and/or stabilize prices of waterborne cargo shipping services between the continental United States and Alaska ("Alaskan Shipping Services").  Defendants' unlawful acts caused Plaintiff Ace Delivery & Moving, Inc. ("Plaintiff") and other class members to pay artificially inflated prices for Alaskan Shipping Services.

2.     Plaintiff brings this case on behalf of a Class of purchasers of Alaskan Shipping Services, as defined below, ("the Class") to recover for the injuries incurred by paying artificially inflated prices for Alaskan Shipping Services.

## JURISDICTION AND VENUE

3.     This action is instituted under Section 4 of the Clayton Act, 15 U.S.C. §§ 15, to recover treble damages and costs of suit, including reasonable attorneys' fees, against Defendants for the injuries sustained by Plaintiff and the members of the Class by

CLASS ACTION COMPLAINT          - 2
*Ace Delivery & Moving, Inc., v. Horizon Lines, LLC et al.*
Case No. 3:08-cv-
DWT 11814743v1 0050033-000430

reason of the violations, as hereinafter alleged, of Section 1 of the Sherman Act,
15 U.S.C. § 1.

4.     This action is also instituted under Section 16 of the Clayton Act, 15 U.S.C.
§ 26, to secure injunctive relief against Defendants to prevent them from further
violations of Section 1 of the Sherman Act, as hereinafter alleged.

5.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and
Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26.

6.     Venue is proper in this district pursuant to Sections 4, 12 and 16 of the
Clayton Act, 15 U.S.C. §§ 15, 22 and 26 and 28 U.S.C. § 1391(b), (c) and (d).  Venue is
proper in this district because during the Class Period one or more of the Defendants
resided, transacted business, was found, or had agents in this district, and because a
substantial part of the events giving rise to Plaintiff's claims occurred, and a substantial
portion of the affected interstate trade and commerce described below was carried out, in
this district.

7.     Defendants, on information and belief, maintain offices, have agents,
transact business, or are found within this judicial district.

## PARTIES

8.     Plaintiff Ace Delivery & Moving, Inc. has its principal place of business in
Anchorage, Alaska.  During the relevant time period, Plaintiff purchased Alaskan
Shipping Services from one or more of the Defendants.  The prices that Plaintiff paid to

CLASS ACTION COMPLAINT          - 3
*Ace Delivery & Moving, Inc., v. Horizon Lines, LLC et al.*
Case No. 3:08-cv-
DWT 11814743v1 0050033-000430

Defendants or their co-conspirators for Alaskan Shipping Services were, as a result of the conspiracy herein alleged, higher than they otherwise would have been. As a result of the alleged conspiracy, Plaintiff was injured in its business and property by reason of the antitrust violations alleged herein.

9. Defendant Horizon Lines, LLC is a Delaware limited liability company with its principal place of business in Charlotte, North Carolina. It operates a fleet of 21 container ships and five port terminals that provide shipping services between the continental United States, Alaska, Guam, Micronesia, and Puerto Rico. Horizon Lines, LLC is a wholly owned operating subsidiary of Horizon Lines, Inc. During the Class Period, Horizon Lines, LLC marketed and sold Alaskan Shipping Services in this district and other locations in the United States.

10. Defendant Horizon Lines of Alaska, LLC is a wholly owned subsidiary of Horizon Lines, Inc. Horizon Lines of Alaska, LLC has its principal place of business in Charlotte, North Carolina.

11. Defendant Horizon Lines, Inc. is a Delaware limited liability company with its principal place of business in Charlotte, North Carolina. Horizon Lines, Inc. operates as a holding company for its wholly-owned subsidiaries, including Horizon Lines, LLC. By and through Horizon, Horizon Lines, Inc. sold Alaskan Shipping Services in this district and other locations in the United States during the Class Period.

CLASS ACTION COMPLAINT            - 4
*Ace Delivery & Moving, Inc., v. Horizon Lines, LLC et al.*
Case No. 3:08-cv-
DWT 11814743v1 0050033-000430

Case 3:08-cv-00207-RRB    Document 1    Filed 09/19/08    Page 4 of 24

12.     Defendants Horizon Lines, LLC, Horizon Lines of Alaska, LLC, and Horizon Lines, Inc. are referred to herein collectively as "Horizon." Horizon accounts for approximately 41 percent of the market for noncontiguous domestic ocean shipping to Alaska.

13.     Defendant Totem Ocean Trailer Express, Inc. is a privately owned Alaska corporation with its headquarters in Federal Way, Washington. It operates a fleet of four containerships that provide shipping services between the continental United States and Alaska. Totem is a wholly owned subsidiary of the American Shipping Group, Inc. During the Class Period Totem marketed and sold Alaskan Shipping Services in this district and other locations in the United States.

14.     Defendant American Shipping Group, Inc. is a Washington corporation with its headquarters in Federal Way, Washington. By and through Totem Ocean Trailer Express, American Shipping Group, Inc. sold Alaskan Shipping Services in this district and other locations in the United States during the Class Period.

15.     Totem Ocean Trailer Express, Inc. and American Shipping Group, Inc. are referred to herein collectively as "TOTE." TOTE accounts for approximately 41 percent of the market for noncontiguous domestic ocean shipping to Alaska.

16.     Whenever this Complaint refers to any act, deed, or transaction of any corporation, that allegation means that the corporation engaged in the act, deed or transaction by or through its officers, directors, agents, employees, or representatives

CLASS ACTION COMPLAINT          - 5
*Ace Delivery & Moving, Inc., v. Horizon Lines, LLC et al.*
Case No. 3:08-cv-
DWT 11814743v1 0050033-000430

while they were actively engaged in the management, direction, control, or transaction of the corporation's business or affairs.

## CO-CONSPIRATORS

17.     Various other persons, firms and corporations, not named as Defendants in this complaint, have participated as co-conspirators with Defendants in the violations alleged herein, and aided, abetted, and performed acts and made statements in furtherance of the conspiracy.

18.     At all relevant times, each Defendant was an agent of each of the remaining Defendants, and in doing the acts alleged herein, was acting within the course and scope of such agency.  Each Defendant ratified and/or authorized the wrongful acts of each of the Defendants.  Defendants, and each of them, are individually sued as participants and as aiders and abettors in the improper acts and transactions that are the subject of the action.

## CLASS ACTION ALLEGATIONS

19.     Plaintiff brings this action on behalf of itself and as a Class action under the provisions of Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of all members of the following Class:

> All persons (excluding governmental entities, Defendants, co-conspirators, other sellers or providers of Alaskan Shipping Services, and the present and former parents, predecessors, subsidiaries, and affiliates of the foregoing) who purchased Alaskan Shipping Services from any of the Defendants at any time during the period from September 18, 2004, or earlier,

CLASS ACTION COMPLAINT                    - 6
*Ace Delivery & Moving, Inc., v. Horizon Lines, LLC et al.*
Case No. 3:08-cv-
DWT 11814743v1 0050033-000430

Case 3:08-cv-00207-RRB   Document 1   Filed 09/19/08   Page 6 of 24

until the effects of Defendants' anticompetitive conduct cease ("Class Period").

20.     Plaintiffs believe that there are hundreds or thousands of members of the Class, as above described, the exact number and their identities being known by Defendants.

21.     The Class is so numerous and geographically dispersed that joinder of all members is impracticable.

22.     There are questions of law and fact common to the Class, which questions relate to the existence of the conspiracy alleged, and the type and common pattern of injury sustained as a result thereof, including but not limited to:

(a)     Whether Defendants and their co-conspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain and/or stabilize prices of, restrict capacity of, and/or allocate markets for Alaskan Shipping Services;

(b)     The identity of the participants in the conspiracy;

(c)     The duration of the conspiracy alleged in this Complaint and the nature and character of the acts performed by Defendants and their co-conspirators in furtherance of the conspiracy;

(d)     Whether the alleged conspiracy violated Section 1 of the Sherman Act;

CLASS ACTION COMPLAINT                - 7
*Ace Delivery & Moving, Inc., v. Horizon Lines, LLC et al.*
Case No. 3:08-cv-
DWT 11814743v1 0050033-000430

Case 3:08-cv-00207-RRB   Document 1   Filed 09/19/08   Page 7 of 24

(e)     Whether the conduct of Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business and property of the Plaintiff and other members of the Class;

(f)     The effect of Defendants' conspiracy on the prices of Alaskan Shipping Services sold during the Class Period; and

(g)     The appropriate measure of damages sustained by Plaintiff and other members of the Class.

23.     Plaintiff's claims are typical of the claims of the Class members; and Plaintiff will fairly and adequately protect the interests of the members of the Class.

24.     Plaintiff's interests are coincident with and not antagonistic to those of the other members of the Class.

25.     Plaintiff is represented by counsel who is competent and experienced in the prosecution of antitrust and Class action litigation.

26.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications.

27.     Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

CLASS ACTION COMPLAINT                - 8
*Ace Delivery & Moving, Inc., v. Horizon Lines, LLC et al.*
Case No. 3:08-cv-
DWT 11814743v1 0050033-000430

Case 3:08-cv-00207-RRB   Document 1   Filed 09/19/08   Page 8 of 24

28.     The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

29.     A Class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## TRADE AND COMMERCE

30.     The activities of Defendants and their co-conspirators, as described in this Complaint, were within the flow of, and substantially affected, interstate commerce.

31.     During the time period covered by this complaint, Defendants and their co-conspirators marketed and sold Alaskan Shipping Services.

32.     Defendants and their co-conspirators, and each of them, have used instrumentalities of interstate commerce to market and sell Alaskan Shipping Services.

33.     Defendants and their co-conspirators have marketed and sold domestic shipping services on routes between Alaska and the continental United States, resulting in a continuous and uninterrupted flow of interstate commerce to customers located throughout the United States.

## THE JONES ACT

34.     The Merchant Marine Act of 1920, commonly referred to as the "Jones Act," prohibits "the transportation of merchandise by water, or by land and water, between points in the United States to which the coastwise laws apply, either directly or

CLASS ACTION COMPLAINT          - 9
*Ace Delivery & Moving, Inc., v. Horizon Lines, LLC et al.*
Case No. 3:08-cv-
DWT 11814743v1 0050033-000430

Case 3:08-cv-00207-RRB    Document 1    Filed 09/19/08    Page 9 of 24

via a foreign port, unless the vessel (1) is wholly owned by citizens of the United States for purposes of engaging in the coastwise trade; and (2) has been issued a certificate of documentation" or is exempt from documentation. 46 U.S.C. § 55102.

35.     The Jones Act grants an exclusive privilege to certain U.S.-made, U.S.-manned, U.S.-flagged, and U.S.-owned vessels to provide commercial shipping services between points in the United States. The U.S. Department of Transportation's Maritime Administration reported that as a result of the Jones Act, "[d]omestic carriers are protected from competition from foreign operators."

36.     The Jones Act markets are not as fragmented as international shipping markets. The three noncontiguous Jones Act markets and Guam are currently served predominantly by four shipping companies: Horizon, Matson Navigation Company, Inc., Crowley Maritime Corporation, and TOTE.

37.     The Jones Act governs domestic shipping services between Alaska and the continental United States, its territories, and possessions. *See* 46 U.S.C. § 55101 (extending coastwise laws to all states, territories and possessions, except American Samoa, the Northern Mariana Islands, Canton Island, and the U.S. Virgin Islands).

38.     The Jones Act's restriction on the carriage of cargo on routes between Alaska and the continental United States, its territories, and possessions to U.S.-owned ships, combined with the limited size of those trade routes, has resulted in an oligopolistic

CLASS ACTION COMPLAINT          - 10
*Ace Delivery & Moving, Inc., v. Horizon Lines, LLC et al.*
Case No. 3:08-cv-
DWT 11814743v1 0050033-000430

Alaskan Shipping Services market.  As a JPMorgan analyst explained, "The U.S. Jones Act trade lanes have historically been oligopolies."

## THE ALASKAN SHIPPING SERVICES MARKET

39.     Alaska, more than any of the continental United States, depends on water transportation.  Access to water has been a critical factor in the development of the state and has often dictated locations of communities.  Alaska's 33,900 miles of coastline is far greater than that of the entire U.S mainland.

40.     Water transportation handles the greatest tonnage of freight coming into the state.  Goods shipped by water between the U.S. mainland and Alaska include food, manufactured goods, lumber/wood, metal products, oil, gas, and chemicals.

41.     The majority of ocean freight revenues earned is for services provided under confidential price/service contracts.  A study in 2004 by Reeve & Associates indicates that approximately 85 percent of cargoes in the Alaskan trade are shipped under confidential, unregulated price/services contracts.  Defendant Horizon, in its 2007 Securities and Exchange Commission ("SEC") Form 10-K, states that in the case of its Alaska trade routes, they "primarily ship containers on the basis of confidential negotiated transportation service contracts that are not subject to rate regulation by the Surface Transportation Board."

42.     The Alaskan Shipping Services market is served by two principal cargo carriers:  Horizon and TOTE.  Defendant Horizon's 2007 SEC Form 10-K states "[w]e

CLASS ACTION COMPLAINT                - 11
*Ace Delivery & Moving, Inc., v. Horizon Lines, LLC et al.*
Case No. 3:08-cv-
DWT 11814743v1 0050033-000430

Case 3:08-cv-00207-RRB   Document 1   Filed 09/19/08   Page 11 of 24

are one of only two major container shipping operators currently serving the Alaska market, each accounting for approximately 41 percent of total container loads traveling from the continental U.S. to Alaska. Horizon Lines and TOTE serve the Alaska market."

43.  Both carriers operate cargo liners between the cities of Tacoma, Washington and Anchorage, Alaska. Tacoma is the sixth largest port in North America and is the leading port in the Pacific Northwest. Horizon also ships between Tacoma and the Alaskan ports of Dutch Harbor and Kodiak.

44.  In 2003, 2.8 million short tons were shipped between the U.S. mainland and Alaska on cargo liners, such as those operated by Horizon and TOTE.

45.  The Port of Tacoma did 3.4 billion dollars in Alaskan shipping business in 2002 making Alaska No. 3 among the port's top trading partners. The senior director of trade development at the Port of Tacoma estimated that "about 30 percent of our business in any given year is related to the Alaskan trade."

46.  Horizon and TOTE have a combined market share of over 80 percent of the Alaskan Shipping Services market. According to a May 2006 study by the U.S. Department of Transportation entitled, "Competition in the Noncontiguous Domestic Maritime Trades," the Alaskan Shipping Services market is "highly concentrated."

47.  There are numerous barriers to entry for companies attempting to enter the Alaskan Shipping Services market. Competition is limited by, *inter alia*: the Jones Act; substantial upfront costs; and a substantial lag time between deciding to enter and

CLASS ACTION COMPLAINT          - 12
*Ace Delivery & Moving, Inc., v. Horizon Lines, LLC et al.*
Case No. 3:08-cv-
DWT 11814743v1 0050033-000430

Case 3:08-cv-00207-RRB   Document 1   Filed 09/19/08   Page 12 of 24

actually being able to enter because of the need for U.S.-built ships and adequate port facilities.  Thus, competitors or potential market entrants lack the capacity to increase output in the short term.

48.     As Defendant Horizon explained in its 2007 SEC Form 10-K:  "Given the limited number of existing Jones Act qualified vessels, the high capital investment and long delivery lead times associated with building a new containership in the U.S., the substantial investment required in infrastructure, and the need to develop a broad base of customer relationships, the markets in which we operate have been less vulnerable to over capacity and volatility than international shipping markets."

49.     Horizon, in a 2005 SEC filing stated that "over the past 11 years, Alaska, Hawaii and Guam, and Puerto Rico have experienced low average rate volatility of 0.4%, 1.3%, and 2.4% per annum while the major transpacific and transatlantic trade routes have experienced average rate volatility of 34.3% and 8.9% per annum."

50.     Alaskan Shipping Services are highly fungible, so that shippers decide to purchase shipping services and competitors compete largely based on price.  Land and air cargo services are more costly compared to ocean transportation, especially for heavy goods.  Price fixing is especially pernicious in a highly concentrated, fungible market for which adequate substitutes do not exist, as is the case here with respect to the Alaskan Shipping Services market.

CLASS ACTION COMPLAINT          - 13
*Ace Delivery & Moving, Inc., v. Horizon Lines, LLC et al.*
Case No. 3:08-cv-
DWT 11814743v1 0050033-000430

Case 3:08-cv-00207-RRB   Document 1   Filed 09/19/08   Page 13 of 24

51.     In sum, the structure of the Alaskan Shipping Services market is such that secret price-fixing is feasible.  Demand is inelastic.  There are extensive barriers to entry in the form of expensive machinery (*e.g.*, U.S.-built ships) and economies of scale.  The market is highly concentrated.  It is essentially a duopoly with Defendants operating nearly free from competition.  Alaskan Shipping Services is a highly standardized product.

## VIOLATIONS ALLEGED REGARDING ALASKAN SHIPPING SERVICES

52.     Beginning at least as early as September 18, 2004, or earlier, the exact dates being unknown to Plaintiff, Defendants and their co-conspirators engaged in a continuing agreement, understanding, and conspiracy in restraint of trade to fix, raise, maintain, and/or stabilize prices of, to restrict capacity of, to allocate the market for, and/or to otherwise engage in anticompetitive conduct regarding Alaskan Shipping Services, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

53.     The contract, combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among the Defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain and/or stabilize prices, to restrict capacity, to allocate the market, and/or to engage in other anticompetitive conduct concerning Alaskan Shipping Services.

CLASS ACTION COMPLAINT                - 14
*Ace Delivery & Moving, Inc., v. Horizon Lines, LLC et al.*
Case No. 3:08-cv-
DWT 11814743v1 0050033-000430

Case 3:08-cv-00207-RRB   Document 1   Filed 09/19/08   Page 14 of 24

54.     In formulating and effectuating the aforesaid contract, combination or conspiracy, Defendants and their co-conspirators did those things that they unlawfully combined and conspired to do, including, among other things:

> a.     agreeing to fix, raise, maintain, and/or stabilize prices for Alaskan Shipping Services;
>
> b.     agreeing to limit the capacity of Alaskan Shipping Services;
>
> c.     exchanging information on customers and capacity; and
>
> d.     monitoring the implementation of the agreements among cartel members.

55.     For example, beginning in at least 2004, Defendants agreed to act in concert with one another in setting fuel surcharges.  Defendants' agreement to charge uniform fuel surcharges is reflected in their frequently lockstep or near lockstep changes in fuel surcharges charged to customers.  Defendants' changes in these surcharges commonly occurred on the same day, or within days of each other, and changed in identical or near identical percentages.

56.     Fuel surcharge increases by Defendants in 2007 reflect this trend.  For example, in late February 2007, Horizon increased its fuel surcharge to 16.5 percent and in early March, TOTE matched this percentage exactly.

57.     In May 2007, within days of each other, Horizon and TOTE increased their fuel surcharges to 17.5 percent.

CLASS ACTION COMPLAINT                - 15
*Ace Delivery & Moving, Inc., v. Horizon Lines, LLC et al.*
Case No. 3:08-cv-
DWT 11814743v1 0050033-000430

Case 3:08-cv-00207-RRB    Document 1    Filed 09/19/08    Page 15 of 24

58.     On November 4, 2007, Horizon and TOTE both increased their respective fuel surcharges to 19.5 percent.

59.     On November 25, 2007, Horizon and TOTE both increased their fuel surcharges to 21.5 percent.

60.     Closely timed changes also occurred in 2006.  On May 21, 2006 TOTE increased its fuel surcharge to 18.5 percent.  On the same day, Horizon increased its fuel charge to the same percentage.

61.     On October 1, 2006 TOTE decreased its fuel surcharge to 17.5 percent. Within days, Horizon matched this fuel surcharge exactly.

62.     On October 15, 2006, TOTE decreased its fuel surcharge to 16.5 percent. Within days, Horizon matched this fuel surcharge exactly.

63.     On November 5, 2007, TOTE decreased its fuel surcharge to 11.5 percent. Within days, Horizon matched this percentage exactly.

64.     Horizon's and TOTE's claims that fuel surcharges were implemented due to increased fuel costs is pretextual; the surcharges did not reflect actual fuel cost increases.  In addition, a history of identical fuel surcharges makes no economic sense as they are calculated as a percentage of revenue.  The revenue that the fuel surcharges generated is dependent upon the underlying revenues generated per container and container utilization, both of which vary between the two carriers.  Even if fuel costs increased for both carriers, the increase in cost as a percentage of revenue cannot be the

CLASS ACTION COMPLAINT            - 16
*Ace Delivery & Moving, Inc., v. Horizon Lines, LLC et al.*
Case No. 3:08-cv-
DWT 11814743v1 0050033-000430

Case 3:08-cv-00207-RRB   Document 1   Filed 09/19/08   Page 16 of 24

same for both carriers as they use different technologies, and have different routes, different operations, and different cargo. Therefore, it is not plausible that Horizon's and TOTE's fuel surcharges were only to raise additional revenue to offset rising fuel costs.

65. The activities described above have been engaged in by Defendants and their co-conspirators for the purpose of effectuating their unlawful agreements.

66. Defendants have participated and continue to participate in trade associations such as the Maritime Cabotage Task Force ("MCTF"), a trade association founded in September 1995 to protect the U.S. maritime cabotage laws and the interests of its members. Charles Raymond, the Chairman, President and CEO of Horizon Lines, Inc., and Robert Zuckerman, Vice-President and General Counsel of Horizon Lines, Inc., both sit on the MCTF's board of directors. Also a member of the MCTF board of directors is Robert Magee, the Chairman, President and CEO of American Shipping Group, Inc.

67. The MCTF lobbies both the executive and legislative branches of government against efforts to open domestic shipping markets to competition with non-Jones Act vessels. Defendants' participation in these and other trade associations facilitates the implementation and monitoring of Defendants' collusive agreements.

68. Defendants profited as a result of their conspiracy. Horizon, for example, reported revenue increases of 11.9 percent to $331.0 million and revenue per container increases of 9.7 percent. These increases occurred despite dramatically rising fuel costs.

CLASS ACTION COMPLAINT          - 17 -
*Ace Delivery & Moving, Inc., v. Horizon Lines, LLC et al.*
Case No. 3:08-cv-
DWT 11814743v1 0050033-000430

Case 3:08-cv-00207-RRB   Document 1   Filed 09/19/08   Page 17 of 24

## <u>GOVERNMENT ANTITRUST INVESTIGATION</u>

69.     On April 17, 2008, it was disclosed that the Antitrust Division of the United States Department of Justice ("DOJ") had begun an investigation into the pricing practices of carriers operating in the domestic shipping trades.  That same day, Horizon disclosed that Federal agents had served search warrants and a Grand Jury subpoena as part of the DOJ's investigation.

70.     On April 21, 2008, Matson Navigation Company, Inc.("Matson"), another carrier which does not operate in Alaska, was served with a Grand Jury subpoena from the U.S. District Court for the Middle District of Florida for documents relating to the DOJ's investigation into the pricing practices of carriers operating in the domestic shipping trades.  Matson's 10-Q report for the first quarter of 2008 states that "while the investigation currently is focused on the Puerto Rico trade, it also includes pricing practices in connection with all domestic trades, including the Hawaii, Alaska and Guam trades."

71.     To obtain search warrants, the United States was required to provide probable cause, accepted by a court, to believe that it would obtain evidence of an antitrust violation from the search warrant – that is, the United States had to have evidence sufficient to have warranted a person of reasonable caution to believe that raiding the offices of a seemingly lawful business would uncover evidence of antitrust

CLASS ACTION COMPLAINT              - 18
*Ace Delivery & Moving, Inc., v. Horizon Lines, LLC et al.*
Case No. 3:08-cv-
DWT 11814743v1 0050033-000430

Case 3:08-cv-00207-RRB    Document 1    Filed 09/19/08    Page 18 of 24

violations and a court had to have examined and accepted that evidence of probable cause.

## FRAUDULENT CONCEALMENT

72.     Plaintiff had no knowledge of Defendants' unlawful self-concealing conspiracy and could not have discovered, by the exercise of due diligence, the contract, combination or conspiracy until April 17, 2008 because of the deceptive practices and techniques of secrecy employed by Defendants to avoid detection of, and fraudulently conceal, their contract, combination, or conspiracy.

73.     Defendants also concealed their conspiracy by publicly stating pretextual reasons for their fuel surcharge increases.

74.     Because the contract, combination, or conspiracy alleged herein was kept secret by Defendants, Plaintiff was unaware of the anticompetitive conduct in the Alaskan Shipping Services industry.  It was not until April 17, 2008--the date on which it was disclosed that the Federal Bureau of Investigation executed search warrants for the premises of Defendant Horizon--that Plaintiff became aware, or could have become aware with the exercise of reasonable diligence, of Defendants' anticompetitive conduct.

75.     As a result of the fraudulent concealment of the conspiracy, Plaintiff asserts the tolling of the applicable statute of limitations affecting the right of action by Plaintiff.

CLASS ACTION COMPLAINT                    - 19
*Ace Delivery & Moving, Inc., v. Horizon Lines, LLC et al.*
Case No. 3:08-cv-
DWT 11814743v1 0050033-000430

Case 3:08-cv-00207-RRB   Document 1   Filed 09/19/08   Page 19 of 24

# COUNT I

## Violation of Section 1 of the Sherman Act, 15 U.S.C. § 1

76.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this complaint.

77.     Defendants' unlawful conduct resulted in artificially high supra-competitive prices charged by Defendants and their co-conspirators to Plaintiff and the members of the Class of direct purchasers of Alaskan Shipping Services.

78.     Plaintiff and members of the Class had to pay more for Alaskan Shipping Services than they would have paid in a competitive marketplace, unfettered by Defendants' and their co-conspirators' collusive and unlawful price-fixing.

79.     Plaintiff and the Class seek to recover for these overcharge damages.

80.     As a direct and proximate result of Defendants' scheme, Plaintiff and the members of the Class have been injured and financially damaged in their respective businesses and property, in amounts which are presently undetermined.  Plaintiff's injuries consist of paying higher prices to purchase Alaskan Shipping Services than it would have paid absent Defendants' conduct.  Plaintiff's injuries are of the type that the antitrust laws were designed to prevent and flow from that which makes Defendants' conduct unlawful.

CLASS ACTION COMPLAINT                    - 20
*Ace Delivery & Moving, Inc., v. Horizon Lines, LLC et al.*
Case No. 3:08-cv-
DWT 11814743v1 0050033-000430

Case 3:08-cv-00207-RRB    Document 1    Filed 09/19/08    Page 20 of 24

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays as follows:

A.      That the Court determine that this action may be maintained as a Class

action under Rule 23 of the Federal Rules of Civil Procedure;

B.      That the contract, combination or conspiracy, and the acts done in

furtherance thereof by Defendants and their co-conspirators, be adjudged to have been in

violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

C.      That judgment be entered for Plaintiff and members of the Class against

Defendants for three times the amount of damages sustained by Plaintiff and the Class as

allowed by law, together with the costs of this action, including reasonable attorneys'

fees;

D.      That Defendants, their affiliates, successors, transferees, assignees, and the

officers, directors, partners, agents and employees thereof, and all other persons acting or

claiming to act on their behalf, be permanently enjoined and restrained from, continuing

to engage in the anticompetitive conduct described herein;

E.      That Plaintiff and members of the Class have such other, further and

different relief as the case may require and Court may deem just and proper under the

circumstances.

CLASS ACTION COMPLAINT                    - 21
*Ace Delivery & Moving, Inc., v. Horizon Lines, LLC et al.*
Case No. 3:08-cv-
DWT 11814743v1 0050033-000430

Case 3:08-cv-00207-RRB   Document 1   Filed 09/19/08   Page 21 of 24

## JURY TRIAL DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of all of the

claims asserted in this complaint so triable.

Dated this 18th day of September, 2008.

s/ David W. Oesting
DAVIS WRIGHT TREMAINE LLP
701 West 8th Avenue, Suite 800
Anchorage, AK 99501
Telephone:  (907) 257-5300
Facsimile:  (907) 257-5399
ABA No. 8106041
E-mail:  daveoesting@dwt.com


MICHAEL D. HAUSFELD
WILLIAM P. BUTTERFIELD
HILARY K. RATWAY
**COHEN MILSTEIN HAUSFELD & TOLL,
P.L.L.C.**
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, D.C.  20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
mhausfeld@cmht.com
wbutterfield@cmht.com
hratway@cmht.com

MICHAEL P. LEHMANN
JON T. KING
ARTHUR N. BAILEY
**COHEN MILSTEIN HAUSFELD & TOLL,
P.L.L.C.**
One Embarcadero Center
Suite 2440

CLASS ACTION COMPLAINT                    - 22
*Ace Delivery & Moving, Inc., v. Horizon Lines, LLC et al.*
Case No. 3:08-cv-
DWT 11814743v1 0050033-000430

Case 3:08-cv-00207-RRB    Document 1    Filed 09/19/08    Page 22 of 24

San Francisco, CA 94111
Telephone: (415) 229-2080
Facsimile: (415) 986-3643
mlehmann@cmht.com
jking@cmht.com
abailey@cmht.com

CRAIG C. CORBITT
FRANCIS O. SCARPULLA
**ZELLE HOFFMAN VOELBEL MASON &
GETTE**
44 Montgomery Street
Suite 2400
San Francisco, CA 94104
Telephone: (800) 229-5293
Facsimile: (415) 693-0700
ccorbitt@zelle.com
fscarpulla@zelle.com

ALLAN STEYER
**STEYER LOWENTHAL BOODROKAS
ALVAREZ & SMITH LLP**
One California Street, Third Floor
San Francisco, CA 94111
Telephone: (415) 421-3400
Facsimile: (415) 421-2234
asteyer@steyerlaw.com

STEVEN A. KANNER
DOUGLAS A. MILLEN
**FREED KANNER LONDON & MILLEN
LLC**
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Telephone: (224) 632-4500
Facsimile: (224) 632-4521
skanner@fklmlaw.com
dmillen@fklmlaw.com

CLASS ACTION COMPLAINT          - 23
*Ace Delivery & Moving, Inc., v. Horizon Lines, LLC et al.*
Case No. 3:08-cv-
DWT 11814743v1 0050033-000430

LYNN L. SARKO
**KELLER ROHRBACK LLP**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 224-7552
Facsimile: (206) 623-3384
lsarko@kellerrohrback.com

Attorneys for Plaintiff Ace Delivery & Moving,
Inc.

CLASS ACTION COMPLAINT                    - 24
*Ace Delivery & Moving, Inc., v. Horizon Lines, LLC et al.*
Case No. 3:08-cv-
DWT 11814743v1 0050033-000430

Case 3:08-cv-00207-RRB   Document 1   Filed 09/19/08   Page 24 of 24